UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID ROSAS, JUAN PEREZ, IGNACIO TORRES,  **14 CV 8788**
JOSE R. MALDONADO, ISABEL TORIBIO SOLIS,
DAVID RIVERA-SOLIS, RAMIRO SALGADO-LANDA,
ALFREDO ARELLANO-RODRIGUEZ, MARGARITO
SALAS-FLORES, and MIGUEL A. RIVERA, on behalf
of themselves and others similarly situated,

Plaintiffs,

  -against-

ALICE'S TEA CUP, LLC, ATC II LLC, and
ATC III, LLC, and/or any other business entity doing
Business as "ALICE'S TEA CUP", located at 102 West
73rd Street, New York, New York, and 156 East 64th
Street, New York, New York, and 220 East 81st Street,
New York, New York, and ZHARIFF MELGOZA, and
HALEY FOX, individually,

Defendants.

---

## MEMORANDUM OF LAW OF DEFENDANTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND LEAVE TO AMEND THE COMPLAINT

<br>

OLENDERFELDMAN LLP
422 Morris Avenue
Summit, New Jersey 07901
(908) 964-2424
Attorneys for Plaintiff Alice's Tea Cup, LLC,
ATC II LLC, ATC III, LLC, Zhariff
Melgoza, and Haley Fox

Of Counsel and on the Brief
Howard A. Matalon, Esq.
Angelina Bruno-Metzger, Esq.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................2

STATEMENT OF FACTS .................................................................................................5

LEGAL ARGUMENT......................................................................................................6

I – PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER MUST BE DENIED......6

A.     Standard of Review Governing Protective Order Motions..................................6

B.     Plaintiffs' Submission of False Employment Verification Information is
Relevant to Defendants' Liability and Damages Under New York
Labor Law.........................................................................................................7

C.     Plaintiffs' Immigration Status is Also Relevant Because It Explains The
Manner in Which Plaintiffs Were Paid and the Type of Employment
Records Maintained by Defendants.......................................................................13

D.     Defendants' Discovery Requests are Directly Related to the Claims and
Defenses of this Case.............................................................................................15

1. Requests Related to Plaintiffs' Tax Returns Are Relevant as These
Documents Provide the Most Objective Evidence of the Amounts
Plaintiffs Claimed as Compensation From Defendants....................................15

2. Requests Related to Plaintiffs' Current Employment Are Relevant to
Plaintiffs' Credibility ......................................................................................16

II – PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT
MUST BE DISMISSED ................................................................................................18

A.     Lauren Fox is Not an "Employer" Within the Meaning of the FLSA and
NYLL and Therefore Cannot be Found Personally Liable for Alleged
Violations of Either Statute...................................................................................18

CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

## CASES

Affordable Hous. Found., Inc. v. Silva,
    469 F.3d 219 (2d Cir. 2006) .....................................................................................10, 11

Ambrosi v. 1085 Park Ave. LLC,
    2008 U.S. Dist. LEXIS 73930 (S.D.N.Y. Sept. 25, 2008).........................................10, 11
          12

Apex Oil Co. v. DiMauro,
    110 F.R.D. 490 (S.D.N.Y. 1985) ...............................................................................6

Balbuena v. IDR Realty LLC,
    6 N.Y.3d 338 (2006) .................................................................................................9, 10,
          11

Barker v. Kallash,
    63 N.Y.2d 19 (1984) .................................................................................................9

Campos v. Lemay,
    2007 U.S. Dist. LEXIS 33877 (S.D.N.Y. May 7, 2007) ...........................................14

Carter v. Dutchess Cmty. Coll.,
    735 F.2d 8 (2d Cir. 1984) ..........................................................................................18

Coque v. Wildflower Estates Developers, Inc.,
    31 A.D.3d 484 (App. Div. 2006) ...............................................................................11

Glatt v. Fox Searchlight Pictures, Inc.,
    293 F.R.D. 516 (S.D.N.Y. 2014) ..............................................................................18, 19

Hart v. Rick's Cabaret Int'l., Inc.,
    967 F. Supp. 2d 901 (S.D.N.Y. 2013) .......................................................................19

Herman v. RSR Sec. Servs.,
    172 F.3d 132 (2d Cir. 1999) ......................................................................................18

Hoffman Plastic Compounds, Inc. v. NLRB,
    535 U.S. 137 (2002)...................................................................................................8, 9

Irizarry v. Catsimatidis,
    722 F.3d 99 (2d Cir. 2013) ........................................................................................18

Lauria v. Heffernan,
    607 F. Supp. 2d 403 (E.D.N.Y. 2000) .........................................................................18

Macedo v. J.D. Posillico, Inc.,
    20 Misc. 3d 1138A (N.Y. Sup. Ct. 2008) ....................................................................11

Mitchell v. Fishbein,
    227 F.R.D. 239 (S.D.N.Y. 2005) ...................................................................................6

S.E.C. v. Cymaticolor Corp.,
    106 F.R.D. 545 (S.D.N.Y. 1985) ................................................................................15

Smith v. Bader,
    83 F.R.D. 437 (S.D.N.Y. 1979) ..................................................................................15

United States v. Diaz,
    878 F.2d 608 (2d Cir. 1989) ..........................................................................................7

Young v. Cooper Cameron Corp.,
    229 F.R.D. 50 (S.D.N.Y. 2005) ..................................................................................13

## STATUTES

29 U.S.C. §203................................................................................................................18

29 U.S.C. §206..................................................................................................................2

29 U.S.C. §207..................................................................................................................2

F.R.C.P. 15.....................................................................................................................18

F.R.C.P. 26.......................................................................................................................6

Fed. R. Evid. 401 .........................................................................................................6, 7

Fed. R. Evid. 402 .............................................................................................................7

Fed. R. Evid. 403 .............................................................................................................7

New York Labor Law §2 ..................................................................................................2

New York Labor Law §198 ............................................................................................13

New York Labor Law §651 ..............................................................................................2

New York Labor Law §663 ................................................................................13

8 U.S.C. §1324................................................................................................8

8 U.S.C. §1546................................................................................................8

29 U.S.C. §255................................................................................................13

## PRELIMINARY STATEMENT

Defendants Alice's Tea Cup, LLC, ATC II, LLC, ATC III, LLC, Zhariff Melgoza, and Haley Fox (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their opposition to Plaintiffs' Motion For a Protective Order and Leave to Amend the Complaint.

Plaintiffs are current and former workers for the Defendant Alice's Tea Cup restaurants ("Alice restaurants"). The thrust of the present litigation concerns Plaintiffs' efforts to seek to recover wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§206(a) and 207(a) ("FLSA") and New York Labor Law §§2 and 651 ("NYLL"). Plaintiffs were paid compensation in the amount required by these laws. Nevertheless, they have chosen to assert wage and overtime violations under both laws by taking advantage of the manner in which their compensation was documented by the Alice restaurants.

The present application before this Court -- styled as a motion for a "protective order" -- seeks to advance Plaintiffs' agenda of sweeping the factual circumstances of their employment with the Alice restaurants under the proverbial rug. Plaintiffs filed this motion in order to position this action as a garden variety case of an employer who took advantage of its workers by failing to properly document their wages in order to avoid its payment obligations under Federal and state law. Such reimagining of the employment relationship with the Alice restaurants is simply untrue.

Plaintiffs are acutely aware of the fact that Defendants initially documented their pay through cash sheets. Plaintiffs directly benefitted from the manner of their pay and the documentation regarding same because of their undocumented status. Ironically, it was the

2

effort of the Defendants to modernize the business by placing Plaintiffs on payroll that led to the filing of this lawsuit. Ultimately, the payroll companies hired by Defendants flagged the fact that Plaintiffs had submitted invalid employment verification documentation, including false Social Security numbers. When Defendants confronted Plaintiffs with their failure to submit proper documentation, Plaintiffs either voluntarily resigned or were subsequently terminated. In retaliation for having disrupted their livelihood, Plaintiffs turned around and sued Defendants for doing what the law required of them, under the pretext of a claim for unpaid wages and overtime.

It is therefore not surprising that Plaintiffs fail to address in their motion any of the foregoing facts, particularly their conduct in knowingly submitting false employment verification information to the Alice restaurants. Instead, Plaintiffs mischaracterize Defendants' efforts to obtain discovery concerning their conduct as simply intending to discover their "immigration status". By branding Defendants' requests in such simplistic fashion, Plaintiffs hope to convince this Court that such evidence is not probative and simply intended to harass or intimidate them from proceeding with this case.

Plaintiffs' motion is factually and legally flawed. Plaintiffs are completely incorrect in their assertion as to why Defendants seek this discovery, which is highly relevant to both liability and damages under FLSA and NYLL. This discovery helps to explain the reason why Plaintiffs' compensation was documented using cash sheets and later as payroll.

Plaintiffs also now seek to add Lauren Fox, a passive shareholder of the Alice restaurants, to this suit as a defendant in a blatant effort to force Defendants to resolve claims in their favor (conveniently taking such action only after the mediation requested by Plaintiffs failed) when they know she has no legal role or responsibilities at the Alice restaurants that would subject her to the claims asserted in this case.

3

For all of the above reasons, as amplified fully below, this Court should deny the present motion in its entirety.

## STATEMENT OF FACTS

With the exception of Alfredo Arellano-Rodriguez (who remains an employee at present), Plaintiffs previously worked at the Alice restaurants in a variety of roles ranging from dishwasher to baker. At all times material to the allegations of the Complaint, Plaintiffs were paid their regular wages and overtime in the amounts required by Federal and New York state law.

In 2010, in an effort to normalize business practices, Defendants began utilizing the services of ADP and Paychex to move Plaintiffs onto payroll and off cash sheets documentation for wages and overtime pay. At the request of ADP and Paychex, Defendants requested Plaintiffs to provide documentation relative to their employment eligibility. In 2014, Paychex advised Defendants that some Plaintiffs had given them invalid Social Security numbers. When Defendants confronted Plaintiffs and asked that they provide them with proper confirmation paperwork, several of the employees voluntarily terminated their employment with the Defendants. Defendants were ultimately forced to terminate the remaining Plaintiffs who were unable to provide the required employment eligibility documentation.

## LEGAL ARGUMENT

### I.   PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER MUST BE DENIED

#### A.   Standard of Review Governing Protective Order Motions

Federal Rule of Civil Procedure 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive". Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery. Under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention. In this case, no such effort occurred.[1] However, Defendants assume such efforts would not lead to resolution short of motion practice.

The party seeking the protective order bears the burden of establishing good cause to enter the order. See Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). The appropriateness of a protective order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Id.; Apex Oil Co. v. DiMauro, 110 F.R.D. 490, 496 (S.D.N.Y. 1985).

The scope of discovery is generally defined to include any manner, not privileged, which is relevant to the subject matter of the pending action or appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). Fed. R. Evid. 401 defines relevant

---

[1]    In the interests of full disclosure, this issue was briefly discussed between counsel during mediation, the substance of which obviously will not be addressed here. The issue was first raised in the actual litigation proceedings during our case management conference after Plaintiffs presented a copy of the motion to counsel at the conference (without prior notice to Defendants).

evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible. Fed. R. Evid. 402.

To establish relevance, Federal Rule of Evidence 401 merely requires that: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action. United States v. Diaz, 878 F.2d 608, 614 (2d Cir. 1989)(citations omitted). Relevant evidence can only be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

In the present case, the motion for a protective order relates to Defendants' efforts to discover and confirm two principal matters: (1) that Plaintiffs did in fact submit false employment verification to Defendants; and (2) that Plaintiffs knowingly did so because they never had any basis to legitimately verify their ability to work in the United States because of their immigration status. This discovery is completely relevant for the reasons set forth below and cannot be suppressed by means of a protective order because it would severely prejudice Defendants' ability to defend against the claims asserted in this litigation.

## B.  Plaintiffs' Submission of False Employment Verification Information is Relevant to Defendants' Liability and Damages Under New York Labor Law

Plaintiffs' memorandum of law is not accurate with respect to the admissibility of immigration status in wage claims, particularly in this Court. Indeed, such evidence is expressly admissible under Second Circuit law as interpreted by the Southern District of New York for the specific purposes under which Defendants seek to introduce the evidence given the unique

7

factual circumstances underlying the present litigation; these factual circumstances render inapposite all of the cases cited by Plaintiffs in support of their motion.

First and foremost, Defendants are entitled to both inquire about and introduce evidence proving that Plaintiffs submitted false information concerning their eligibility to work for Alice restaurants to defeat Plaintiffs' claims for wages and overtime under NYLL.  To understand the treatment of this issue, Defendants submit this case analysis of the interrelationship between the Immigration Reform Control Act ("IRCA") and NYLL.

In Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), the United States Supreme Court addressed the issue of whether plaintiff (an illegal alien) could be awarded back pay by the National Labor Relations Board after the worker was impermissibly terminated for engaging in union-organizing activities.   In Hoffman, it was undisputed that plaintiff had violated the IRCA by gaining employment through presentation of false work authorization documents.  By enacting the IRCA, Congress made prohibiting the employment of illegal aliens central to the enforcement of United States immigration policy, intending to reduce future illegal immigration through employment sanctions.  See Id. at 147; 8 U.S.C. §1324c(a).  Aliens in fact cannot legally obtain employment unless they present specified documents that establish eligibility.  See Id. at 148; 8 U.S.C. §1324a.  It is illegal for an undocumented alien to undermine this requirement by submitting fraudulent documentation, as the IRCA explicitly makes it unlawful to knowingly "use, attempt to use, possess, obtain, accept, or receive or to provide any forged, counterfeit, altered, or falsely made document in order to satisfy any requirement of [the IRCA] or to obtain benefit under [the IRCA]."  8 U.S.C. §1324c(a)(2).  An alien who uses, or attempts to use, such documents is subject to fines and criminal prosecution.  See 8 U.S.C. §1546(b).

8

The Supreme Court in Hoffman concluded that plaintiff could not recover a backpay award because it would conflict with the purpose of IRCA. See Hoffman, 535 U.S. at 148. The Court observed that "[u]nder the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification . . . or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations." Id. The Court emphasized that the salient factor in the case was that "Congress has expressly made it criminally punishable for an alien to obtain employment with false documents" and that the plaintiff-illegal alien had, in fact, committed this crime. Id. at 149. Thus, the Court determined that "awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations" because the alien would qualify for an award "only by remaining inside the United States illegally" and could not "mitigate damages . . . without triggering new IRCA violations, either by tendering false documents to employers or by finding employers willing to ignore IRCA and hire illegal workers." Id. at 150-151. The Court's holding is consistent with the precedent which dictates that civil recovery is foreclosed "if the plaintiff's conduct constituted a serious violation of the law and the injuries for which he seeks recovery were the direct result of that violation." Barker v. Kallash, 63 N.Y.2d 19, 24 (1984).

In Balbuena v. IDR Realty LLC, 6 N.Y.3d 338 (2006), the New York Court of Appeals confronted the related issue of whether IRCA precludes an undocumented alien from receiving an award of lost wages for physical injuries suffered as a result of an employer's violation of NYLL. Balbuena addressed the intersection of federal law -- IRCA -- and state labor law. Balbuena ultimately concluded that "IRCA does not bar maintenance of a claim for lost wages by an undocumented alien." Id. at 363. *In reaching this decision, however, Balbuena*

9

*emphasized that its conclusion extended only to situations in which the undocumented alien seeking recovery "did not commit a criminal act under IRCA."* Id. at 360 (emphasis added).

Shortly after the New York Court of Appeals' decision in Balbuena, the Second Circuit recognized that where an employee who was an undocumented worker violated the IRCA, such plaintiff could be precluded from recovering lost wages based on NYLL. See Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219 (2d Cir. 2006). While the Second Circuit in Madeira allowed the worker in question to obtain lost wages, *it emphasized that its decision was limited to the situation in which the undocumented worker did not violate IRCA by using false identification to obtain work.* See Id. at 223-24 (emphasis added).

The Balbuena and Madeira decisions led the Southern District of New York to issue its precedent setting decision in Ambrosi v. 1085 Park Ave. LLC, 2008 U.S. Dist. LEXIS 73930, at *40-45 (S.D.N.Y. Sept. 25, 2008), which presented facts where an undocumented worker used false documentation to obtain employment and was precluded from recovering lost wages under the NYLL. A copy of the Ambrosi court's decision is attached hereto as Exhibit A.

In Ambrosi, the plaintiff sought to recover lost wages under the NYLL. His employer defended against the action on the grounds that the plaintiff was an undocumented alien who obtained employment with defendant through fraudulent means, particularly through the use of a falsified Social Security card. See Id. It was undisputed that the plaintiff was undocumented and submitted a fraudulent Social Security card. Id. at 42. Additionally, an examination of plaintiff's employment records revealed that Plaintiff had listed a false Social Security number on his employment application and W-4. Id. at 42-43. Furthermore, a photocopy of plaintiff's fraudulent Social Security card appeared among defendant's employment records. Id. at 43.[2]

---

[2]     In the present case, Plaintiffs supplied fictitious Social Security information, including one actual card that subsequently was revealed did not belong to one of the Plaintiffs. Defendants believe Plaintiffs have in their

The Ambrosi court found that based on these documents, plaintiff clearly used his fraudulent Social Security number to obtain employment because he was an illegal alien, and thus no genuine issue of material fact existed as to whether plaintiff violated the IRCA. Id. Plaintiff attempted to argue that even though he used a fraudulent Social Security Card to obtain employment, his actions did not violate the IRCA because he lacked the requisite intent of "knowingly" using the false document to obtain employmen.t Id. However, plaintiff was well aware of his undocumented status and he testified that he knew based on the factual circumstances that the Social Security number did not belong to him. Id. at 43-44. Thus, the Court concluded that plaintiff's own statements clearly indicated that he was aware the Social Security card he obtained was fraudulent, and as such there was no genuine issue of material fact that plaintiff possessed the intent required to violate IRCA. Id. at 44.

After reviewing Balbuena and Madeira, the Southern District of New York reached the following conclusion regarding plaintiff's claims under the NYLL:

> By explicitly noting that their allowance of lost wages is limited to workers who do not violate IRCA, *Balbuena and Madeira suggest that workers who do use false documentation to obtain employment may not recover lost wages under New York Labor Law. The Supreme Court's holding in Hoffman -- that backpay is not recoverable in the context of unfair labor practices for workers who violate IRCA -- further supports this conclusion.* In light of these precedents, this Court feels compelled to conclude that undocumented workers who violate IRCA may not recover lost wages in a personal injury action based on a violation of New York Labor Law. See Macedo v. J.D. Posillico, Inc., 20 Misc. 3d 1138A, 2008 WL 4038048, at *5 (N.Y. Sup. Ct. 2008) (holding that "plaintiff's violation of IRCA, by producing a false social security number in order to obtain employment, bars his claim for lost wages"); Coque v. Wildflower Estates Developers, Inc., 31 A.D.3d 484, 818 N.Y.S.2d 546, 550 (App. Div. 2006) (stating that "an undocumented alien may be precluded from recovering damages for lost wages if he or she obtained employment by submitting false documentation to the employer").

---

possession discoverable evidence supporting their use of false Social Security cards and other fictitious information since they provided that information to Defendants.

> Examination of the facts in <u>Ambrosi</u> reveals that Plaintiff's claim for lost wages must be dismissed because Plaintiff is an undocumented alien who knowingly used fraudulent documentation to obtain employment with [defendant] in violation of IRCA.

<u>Id</u>. at \*40-41 (emphasis added).  Based upon the operative case law and plaintiff's submission of false employment information, the <u>Ambrosi</u> Court granted Defendant's motion for summary judgment dismissing plaintiff's lost wages claims under the NYLL.  Needless to say, implicit in the Court's decision is the fact that the false information submitted by plaintiff was completely discoverable and relevant to the claims and defenses asserted under the NYLL.

Accordingly, in the event that Defendants establish that Plaintiffs utilized false employment documentation to maintain their employment following inquiry by their employer, this Court will have to find that Plaintiffs' claims for wages under New York Labor law are barred as a matter of law.  This makes evidence of Plaintiffs' undocumented status and their submission of false verification information completely relevant.  *Indeed, the best evidence that Plaintiffs knowingly submitted false documentation to the Alice restaurants is to be found in their immigration status since the intent to knowingly submit false documentation would be established by virtue of that status (i.e., an illegal alien would know by virtue of their status that the submission of any Social Security or employee verification documentation would be false per se).*

In addition, Plaintiffs apparently intend to prosecute this litigation based on their own testimony as to the hours worked at the Alice restaurants notwithstanding the schedules and other documentation presented by Defendants.  Accordingly, credibility assessments will play a fundamental role at trial, and the fact that Plaintiffs submitted false documentation of their ability to work for the Alice restaurants will serve as impeachment evidence that cannot be suppressed at the time of trial.

12

In any event, the dismissal of Plaintiffs' NYLL claims would obviously have a dramatic effect on the scope of the present litigation. The statute of limitations for back wages under NYLL is six years. (N.Y. Labor Law §§198(3), 663(3). In contrast, the statute of limitations under the FLSA is limited to only two years, unless there is a judicial determination that an employer acted willfully, in which case the period is extended to three years. 29 U.S.C. §255(a). As will be shown in this litigation, Defendants' actions do not rise to the level of a willful violation as they did not know or show a reckless disregard for the matter in which their conduct was prohibited by the FLSA. See Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009). Accordingly, the elimination of Plaintiffs' NYLL claims would result in significant restructuring of any liability and damages that Plaintiffs might otherwise recover in this litigation.

Thus, the information is vital to Defendants' ability to demonstrate as a matter of law that Plaintiffs are not entitled to recover compensation under NYLL. Were the Court to bar Defendants from confirming through discovery that Plaintiffs submitted false information as part of Defendants' efforts to place them on payroll, our clients would be irreparably prejudiced.

## C. Plaintiffs' Immigration Status is Also Relevant Because It Explains The Manner in Which Plaintiffs Were Paid and the Type of Employment Records Maintained by Defendants

Evidence of Plaintiffs' undocumented status is also relevant to Defendants other defenses to Plaintiffs' FLSA and NYLL claims. As noted above, Plaintiffs' status explains why they were satisfied with the manner in which Defendants initially documented their wages, through the use of cash sheets, and only took action after Defendants sought to move them to payroll. In this regard, another Southern District of New York case is directly on point.

13

In <u>Campos v. Lemay</u>, 2007 U.S. Dist. LEXIS 33877, at *23-25 (S.D.N.Y. May 7, 2007) -
- another decision conveniently ignored by Plaintiffs -- this Court found that the Plaintiff's
immigration status was relevant to the Plaintiff's wage and overtime claims.  A copy of the
<u>Campos</u> court's decision is attached hereto as <u>Exhibit B</u>.  In its decision to deny plaintiff's
motion in limine to exclude evidence of her undocumented status, the court agreed with
defendants that "the method of pay [in cash] explains at least to at last some degree the absence
of written records, an issue that may affect … the credibility of Plaintiff's underpayment claims,
as well as [the jury's] assessment of any issue regarding the willfulness of any violations that
***may*** be found."  <u>Id.</u> at 22-26 (emphasis in original).

The court in <u>Campos</u> reached this holding despite plaintiff's concern of the *in terrorem*
effect often associated with the disclosure of a party's immigration status.  <u>Id.</u> at 25.  While the
court recognized that a jury might impermissibly allow any views or feelings that they may have
concerning immigrants or immigration policy to enter into their deliberations, the court believed
that such issue could be adequately addressed with appropriate limiting instructions.  <u>Id.</u>  Such
concerns are even farther removed in the present case.  This litigation is a non-jury trial, and the
Court will not be swayed in the least by Plaintiffs' undocumented status.

Here, as in <u>Campos</u>, Plaintiffs' immigration status is important to place into context why
Plaintiffs were satisfied with the manner of their pay and the manner in which the Alice
restaurants documented their pay.  Plaintiffs had no problem working for Alice restaurants and
being paid the wages they received pursuant to cash sheets documenting same.  Plaintiffs were
later placed on payroll until the payroll companies flagged their invalid Social Security numbers.
The evidence not only bears on credibility but also on the fact that Defendants did not knowingly

14

intend to violate the FLSA and took measures to move to a payroll system which was hampered by Plaintiffs' false documentation.

**D.      Defendants' Discovery Requests are Directly Related to the Claims
          and Defenses of this Case**

As noted above, the thrust of the majority of the discovery propounded by Defendants is to get at the critical issues concerning Plaintiffs' submission of false employment verification documentation and to confirm Plaintiff's immigration status to establish the intention of Plaintiffs to deceive Defendants.  The only two aspects of such discovery worth noting further, as they are specifically called out by Plaintiffs in their motion, concern the production of tax returns and information from Plaintiffs' current employers, if any.  Each of these important avenues of discovery is discussed in turn below.

**1.      Requests Related to Plaintiffs' Tax Returns Are Relevant as These
          Documents Provide the Most Objective Evidence of the Amounts Plaintiffs
          Claimed as Compensation From Defendants**

To compel the disclosure of income tax returns, a two-part test must be satisfied: (1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not "otherwise readily obtainable."  S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985).  Another compelling aspect of the test is whether the taxpayer himself has made an issue of his income, which is the case here.  See Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979).

In the present case, Plaintiffs have the burden of demonstrating that they were not paid the proper wages or overtime and placed their compensation squarely at issue.  The tax returns are directly relevant.  The tax returns will state unequivocally the amount of wages that Plaintiffs claimed under penalty of perjury that they received from the Alice restaurants for the years of

their claims (2008-2014). This is particularly important because Plaintiffs claim they were not paid wages and overtime as required by law and have provided little more than a spreadsheet made up after the fact as to what Plaintiffs claim their hours were and scant documentation of their actual compensation, particularly during the early years of their claims (2008-2010). It is critical to permit Defendants to discover all of the evidence Plaintiffs have that bears on this issue. Upon information and belief, the returns will further corroborate Defendants' position that they were paid the amount of compensation required by state and Federal law.

Defendants should not be precluded from discovering the tax returns where, as here, Plaintiffs have placed their compensation directly at issue and whether Plaintiffs were paid the amounts required by law is the primary issue in the case at bar. Any evidence as to documentation of compensation is therefore relevant to these proceedings. If Plaintiffs have not filed federal or state tax returns, they can simply stipulate that they have not filed returns and have no responsive documents.

## 2. Requests Related to Plaintiffs' Current Employment Are Relevant to Plaintiffs' Credibility.

The implication in most FLSA cases (including the majority of the cases cited by Plaintiffs in their moving brief) is that the plaintiff was taken advantage of by his or her employer because of their status and paid less than the amounts required by law. However, Plaintiffs were content being paid in cash *because of* their undocumented status – a status exposed by Defendants' efforts to move them to a payroll system. Defendants seek to prove through discovery of Plaintiffs' current employers that they are continuing to be paid on a cash basis (or continue to provide false documentation of their employability) precisely because they want to be paid on that basis to avoid scrutiny. Obviously, to the extent Plaintiffs are being paid in cash pursuant to cash sheets, it would wholly undermine Plaintiffs' credibility as to any claim

16

of being victimized by Defendants and help to confirm Plaintiffs' motivations in filing the present lawsuit.

## II. PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT MUST BE DISMISSED

### A. Lauren Fox is Not an "Employer" Within the Meaning of the FLSA and NYLL and Therefore Cannot be Found Personally Liable for Alleged Violations of Either Statute

Defendants' recognize motions for leave to amend a complaint are to be liberally granted. See F.R.C.P. 15(a). We have attempted without success to explain to Plaintiffs' counsel that Lauren Fox failed to exercise the requisite control over the Company's operations, particularly employment decisions, to meet the FLSA and NYLL's definition of an "employer" and thus be personally liable for violations of the same.

Under the FLSA, personal liability may be imposed on "employers," which includes both entities and individuals. The FLSA defines an employer as "any persons acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). Under the "economic reality" test announced by the Second Circuit in Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999), the court must evaluates whether the alleged employer exercises a sufficient level of operational control in the company's employment of employees, by examining factors, including whether the alleged employer: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984); Irizarry v. Catsimatidis, 722 F.2d 99, 104-105 (2d Cir. 2013).

Likewise, under the NYLL, Plaintiffs' have the burden of proving that Lauren Fox was an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-07 (E.D.N.Y. 2000). As the NYLL is the state analogue to the FLSA, the "NYLL's definitions are nearly identical to that of the FLSA's." Glatt v Fox Searchlight Pictures, Inc., 293 F.R.D. 516,

526 (S.D.N.Y. 2014). Similar to the FLSA, the New York common law test for who constitutes an employer for the purposes of NYLL "focuses [...] on the degree of control exercised by the purported employer" over the purported employee. Hart v. Rick's Cabaret Int'l., Inc., 967 F. Supp. 2d 901, 923-24 (S.D.N.Y. 2013) (recognizing that there is general support for giving the FLSA and NYLL consistent interpretations).

Lauren Fox's role within the Company was that of a passive minority shareholder, who was not involved in any of the Company's daily operations, particularly employment decisions. As such, she: (1) did not have the power to hire and fire Plaintiffs; (2) did not supervise or control employee work schedules or conditions of their employment; (3) did not determine the rate and method of their payment; and (4) did not maintain their employment records. Accordingly, the Lauren Fox was not an employer under the FLSA nor the NYLL and therefore cannot be found personally liable for alleged violations of either statute.

For these reasons, this Court should deny Plaintiffs' motion to amend the complaint to include Lauren Fox as a defendant.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to deny the Motion filed by Plaintiffs for a Protective Order and for Leave to Amend the Complaint.

**OLENDERFELDMAN LLP**

Respectfully submitted,

By:**/s/ *Howard A. Matalon***

Howard A. Matalon, Esq.
OLENDERFELDMAN LLP
422 Morris Avenue
Summit, New Jersey 07901
(908) 964-2424
Attorneys for Defendants Alice's Tea Cup,
LLC, ATC II LLC, ATC III, LLC, Zhariff
Melgoza, and Haley Fox

Dated: Summit, New Jersey
        June 8, 2015