UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID ROSAS, JUAN PEREZ, IGNACIO TORRES,
JOSE R. MALDONADO, ISABEL TORIBIO SOLIS,
DAVID RIVERA-SOLIS, RAMIRO SALGADO-LANDA,
ALFREDO ARELLANO-RODRIGUEZ, MARGARITO
SALAS-FLORES, and MIGUEL A. RIVERA, on behalf
of themselves and others similarly situated,

                    Plaintiffs,

   -against-

ALICE'S TEA CUP, LLC, ATC II LLC,
and ATC III, LLC, and/or any other business entity
doing business as "ALICES'S TEA CUP", located at
102 West 73rd Street, New York, New York, and
156 East 64th Street, New York, New York, and
220 East 81st Street, New York, New York, and
ZHARIFF MELGOZA, and HALEY FOX, individually,

                    Defendants.

Case No.  14 Civ. 8788
          (JCF)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND LEAVE TO AMEND THE COMPLAINT

CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com
www.jcpclaw.com

## REPLY

Plaintiffs respectfully submit this reply memorandum of law in response to Defendants' memorandum in opposition, and in further support of Plaintiffs' motion for an order precluding Defendants from discovering, through testimony or documents, information that involves Plaintiffs' immigration status or citizenship, during discovery and through the time of trial.

At the outset we respond briefly to counsel's assertion of certain facts. As the court is aware, this is an action for unpaid wages under the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et. seq.* (FLSA), and the New York Labor Law, §§ 190, *et. seq.* There are eleven (11) plaintiffs, who are primarily comprised of former kitchen employees at Defendants' three (3) restaurants on the Upper East Side of Manhattan.[1] The Plaintiffs were paid a flat "daily" rate but were not paid an overtime premium for their work beyond forty (40) hours each week. They were all paid partly by check and partly by cash, with the exception of Jose Maldonado, who was paid all his wages in cash. Aside from their recollections, the Plaintiffs have some documentary proof of their hours. However, although the restaurants employ seventy-five (75) or more persons at any given time, none of the employees punched a time clock. And, none of the Plaintiffs were given an accurate weekly wage statement reflecting their hours and the basis for their compensation. As such, part of their proof as to hours and pay will be testimonial. Apart from counsel's memorandum in opposition, concerning the circumstances of Plaintiffs' termination, there is no

---

[1] One (1) plaintiff, Ignacio Torres, worked as a food runner.

2

evidence that Plaintiffs misrepresented their status or provided false information to their employer. Without exception, Plaintiffs were long term, well regarded, hard working employees who were not paid overtime.

We acknowledge that Plaintiffs' factual allegations as described here, are in contrast to Defendants' allegations, at page 5 of the opposition, that "Plaintiffs were paid their regular wages and overtime in the amounts required by Federal and New York state law". We respect that these are the ultimate issues to be determined by the court in this action. No party, as yet, has cited to any evidence in admissible form, or otherwise. But these issues, as framed by Plaintiffs and Defendants, make this indeed a "garden variety" claim of failing to pay overtime under applicable Federal and New York State wage and hour laws, and can and should be determined without reference to the immigration status of the Plaintiffs.

Nevertheless, from the outset of this litigation and throughout all of our interactions to date, in conversations and writings, Defendants have taken the position that the Plaintiffs' immigration status is vital to the defense to the allegations. One of Defense counsel's initial writings to the undersigned referred to the Plaintiffs as "peons". Defendants view immigration status as a factor relevant to the way they compensated the Plaintiffs, and whether they were owed overtime. *See, e.g.,* Defendants' opposition, p. 12 ("[i]n the event that Defendants establish that Plaintiff utilized false employment documentation to maintain their employment following inquiry by their employer, this Court will have to find that Plaintiffs' claims for wages under New York Labor Law are barred as a matter of law.") Defendants' characterization of the New York Labor Law as being unavailable to undocumented

3

workers is, simply stated, wrong. Even after our motion for a protective order cited to the wide array of cases on point in this District, is it quite extraordinary that Defendants' opposition insists Plaintiffs' immigration status is important to the defense, and could explain and legally justify the manner of compensation.

A person's immigration status is irrelevant to a claim for unpaid wages. The Fair Labor Standards Act and the New York Labor Law and its implementing regulations make no distinction between documented and undocumented individuals – and the vast majority of cases find immigration status to be both undiscoverable and inadmissible. *See, e.g., Francois v. Mazer*, 2012 U.S. Dist. LEXIS 60846, *2 (S.D.N.Y. 2012) (Judge Forrest held evidence of immigration status irrelevant regarding any issue with respect to Federal and New York State wage and hour law claims.); *Marquez v. Erenler, Inc.*, 2013 U.S. Dist. LEXIS 138630 (S.D.N.Y. 2013) (Magistrate Judge Dolinger granted plaintiffs a protective order against discovery of tax returns and immigration status)

The *Marquez* court considered and rejected the same arguments defendants proffer in the case at bar. Judge Dolinger properly held that eligibility for a remedy under the Fair Labor Standards Act and New York Labor Law is not controlled by *Hoffman v. NLRB*, a case relied upon by Defendants herein. Judge Dolinger also declined to order production of tax returns, which he described as "plainly intended as a back-door effort to obtain immigration status." *Marquez v. Erenler, Inc.*, 2013 U.S. Dist. LEXIS at *4-5.

Similarly, Magistrate Judge Ellis granted a protective order barring discovery requests dealing with immigration status, social security numbers, and tax returns in

*Rengifo v. Erevos Enters*, 2007 U.S. Dist. LEXIS 19928, *9 (S.D.N.Y. 2007). ("Granting employers the right to inquire into immigration status in employment cases would allow them to implicitly raise threats of negative consequences when a worker reports illegal practices.") Here, there has been nothing implicit about Defendants' tactics. They have explicitly threatened the Plaintiffs in an attempt to persuade Plaintiffs to dismiss the claims.

Cases discussing immigration status in the context of a wage and hour case cite good reasons to preclude disclosure of immigration status and related topics: they present a danger of intimidation that would inhibit plaintiffs from pursuing their rights; and, they are at best collateral issues not relevant to the Federal or State statutory claims. Conversely, Defendants do not cite persuasive authority or proffer a valid basis to discover this information. Defendants' reliance on *Hoffman Plastic Compounds, Inc. v. NLRB*, 53 U.S. 137 (2002) is misplaced. *See, Colon v. Major Perry St. Corp.*, 987 F.Supp.2d 451 (S.D.N.Y. 2013) (Judge Oetken considering and distinguishing discovery of immigration status in NLRA and FLSA proceedings); *see also, Rodriguez v. The Pie of Port Jefferson Corp.*, 48 F.Supp.3d 424 (E.D.N.Y. 2014). A thorough review of cases in this District has found none that apply NLRA precedents to FLSA cases. Moreover, Defendants' submission of, and reliance upon *Ambrosi v. 1085 Park Ave.*, LLC, 2008 U.S. Dist. LEXIS 73930 (S.D.N.Y. 2008) is surprising in that *Ambrosi* dealt with a claim for lost of *future* wages in *a personal injury claim* filed in the District Court based upon diversity jurisdiction. The *Colon* analysis, relevant here, is not affected by Judge Jones' thoughtful opinion in *Ambrosi*.

5

Indeed, *Ambrosi* does not remotely mirror the circumstances of this case and Defendants' reliance upon it is either misleading or misinformed.

Defendants' contention in their memorandum in opposition, at p. 13, that *"Plaintiffs' status explains why they were satisfied with the manner in which Defendants initially documented their wages, through the use of cash sheets, and only took action after Defendants sought to move them to payroll"* is breathtakingly racist, and inaccurate. In fact, Plaintiffs always received a portion of their wages "on the books" (and a portion in cash), and they never requested (nor "were satisfied with") the manner in which Defendants "documented" their wages. These are issues, which can easily be litigated without reference to immigration status. There was no "move" onto payroll. Plaintiffs were always on "payroll" – they simply did not receive overtime. Finally, this case is not similar to *Campos v. Lemay*, 2007 U.S. Dist. LEXIS 33887 (S.D.N.Y. 2007) a decision which is inconsistent with the overwhelming weight of authority, and should be interpreted to apply to the unique factual circumstances of a live-in domestic worker and caregiver who was the sole employee and paid exclusively in cash. Unlike the employer in *Campos*, this case involved a true enterprise, with three (3) locations, seventy-five (75) or more employees, and a payroll system which violated Federal and New York State law.

## DISCOVERY OF TAX RETURNS SHOULD BE DENIED

We respectfully cite to two (2) decisions, both by Magistrate Judge Ronald Ellis, which in support of our motion for a protective order with regard to the disclosure of Plaintiffs' tax returns: *Rengifo v. Erevos Enters*, 2007 U.S. Dist. LEXIS 19928 (S.D.N.Y. 2007); and *Chen v. Republic Restaurant Corp.*, 2008 U.S. Dist.

LEXIS 24000 (S.D.N.Y. 2008). Judge Ellis correctly reasoned that tax returns are confidential documents and there was not a compelling need for them. We do not believe they are relevant, and in fact, there does not appear to be a significant dispute as the amount of earnings of the Plaintiffs. To the extent tax returns are relevant to issues of credibility, we respectfully submit that the exchange must be reciprocal. On behalf of Plaintiffs we requested Defendants produce their income tax and quarterly payroll tax filings. Unlike Plaintiffs, Defendants simply objected and refused to provide the relevant tax returns, without seeking a protective order. We certainly believe Defendants' documents are just as (if not more) relevant to issues of credibility, in that they would show less payroll "on the books" than was actually paid to each of the plaintiffs in this case. As such, in the event the court determines tax returns to be discoverable, we would simply ask that it likewise compel Defendants to disclose the previously demanded tax filing information, under the protection of a confidentiality order. Clearly, we do not believe only the Plaintiffs' are subject to impeachment on this issue.

## A PROTECTIVE ORDER SHOULD ISSUE WITH RESPECT TO PLAINTIFFS' CURRENT EMPLOYMENT

Of all the potential areas of discovery, Defendants' demand that Plaintiffs reveal their current employment is fraught with danger and bears absolutely no relevance to the issues in the case or even any issues of credibility. After being terminated in late 2014, Plaintiffs may have secured other employment. There is no claim for lost earnings after their termination. Forcing Plaintiffs to state where they are working presently would subject them to being contacted there by Defendants or

7

others acting on Defendants' behalf. Plaintiffs wish all communication to be through their attorneys and do not wish to be contacted at their current place of employment. We are mindful of other clients who have lost their job as a result of retaliatory conduct of a former employer and my clients and I respectfully request that this information be protected on the grounds that it is not remotely relevant to the claims in the case and its disclosure could cause significant and permanent harm.

## PROPOSED AMENDED COMPLAINT

Defendants cite the correct standard for allowing an amended complaint, but still oppose the amendment on grounds which bear no relationship to the validity of the proposed pleading but which require discovery and proof at trial. Certainly, Plaintiffs will have to meet their burden of proof as to the allegations in the amended complaint. Plaintiffs respectfully have a good faith basis to allege Ms. Fox was their employer under the FLSA and New York Labor Law. Ms. Fox was present on a daily basis and supervised and controlled their work.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion *for protection*:

1. precluding Defendants from eliciting or in this action any evidence, testimony, or information which bears upon, touches upon, or invokes any reference to Plaintiff's immigration to the United States, or immigration status at any point in time, during discovery and through the time of trial in this action;

2. preventing Defendants from discovering Plaintiffs' current employment; and

3. permitting plaintiffs to file the proposed amended complaint.

Dated: New York, New York
       June 12, 2015

                                            **CILENTI & COOPER, PLLC**

                            By: _____
                                     Peter H. Cooper (PHC 4714)
                                  **Attorneys for Plaintiffs**
                                  708 Third Avenue – 6th Floor
                                  New York, NY 10017
                                  T. (212) 209-3933
                                  F. (212) 209-7102
                                  pcooper@jcpclaw.com