UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
DAVID ROSAS, JUAN PEREZ, IGNACIO       :    14 Civ. 8788 (JCF)
TORRES, JOSE R. MALDONADO, ISABEL      :
TORIBIO SOLIS, DAVID RIVERS-SOLIS,     :       MEMORANDUM
RAMIRO SALGADO-LANDA, ALFREDO          :       AND  ORDER
ARELLANO-RODRIGUEZ, MARGARITO          :
SALAS-FLORES, and MIGUEL A. RIVERA,    :
on behalf of themselves and others     :
similarly situated,                    :
                                       :
              Plaintiffs,              :
                                       :
     - against -                       :
                                       :
ALICE'S TEA CUP, LLC, ATC II LLC,      :
and ATCIII, LLC, and/or any other      :
business entity doing business as      :
"ALICE'S TEA CUP," located at 102      :
West 73rd Street, New York, New        :
York, and 156 East 64th Street,        :
New York, New York, and 220 East       :
81st Street, New York, New York,       :
and ZHARIFF MELGOZA, and HALEY         :
FOX, individually,                     :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     The plaintiffs, current and former employees of Alice's Tea Cup, LLC, ATC II LLC, and ATCIII, LLC (all restaurants doing business under the name "Alice's Tea Cup") bring this action against the three associated entities alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190, et seq.  The parties have consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c).  In response to discovery requests from the defendants, the plaintiffs filed a motion for a protective order.  The plaintiffs also seek leave to amend the

1

complaint. For the following reasons, both applications are granted.

Background

The plaintiffs allege that during the course of their employment, the defendants failed to pay them overtime compensation and a "spread of hours" premium for days when the plaintiffs worked more than ten hours. (Complaint ("Compl."), ¶¶ 2, 4). The Complaint asserts claims against the three corporate defendants as well as Zhariff Melgoza and Haley Fox, who "own[] the stock of Alice's Tea Cup, own[] Alice's Tea Cup, and manage[] and make[] all business decisions," including decisions related to employee hours and salaries. (Compl., ¶¶ 110, 111).

In discovery requests dated May 11, 2015, the defendants demand that the plaintiffs produce documents verifying their immigration status, work authorization documents, federal and state income tax returns, and documents "sufficient to identify the current employer" for each plaintiff. (Defendants' First Request for Documents ("Def. Doc. Req."), attached as Exh. A to Declaration of Peter H. Cooper dated May 15, 2015 ("Cooper Decl."), Request nos. 12-15, 33). The defendants also request admissions related to the plaintiffs' immigration status and authorization to work. (Defendants' First Request for Admissions to Plaintiffs ("Def. RFA"), attached as Exh. B to Cooper Decl., Request nos. 1-15, 20). They ask the plaintiffs to admit that they "supplied false or fictitious [S]ocial [S]ecurity numbers" to the defendants during the course of their employment and that "none of the [S]ocial

[S]ecurity numbers [the p]laintiffs provided . . . were actually issued to [them] by the United States Social Security Administration."  (Def. RFA, Request nos. 11, 12).

On May 15, 2015, the plaintiffs filed the instant motion for a protective order and for leave to amend the complaint.  I will address these two issues separately.

Discussion

A. Motion for a Protective Order

The plaintiffs seek an order "[p]rotecting plaintiffs from any discovery demand that involves plaintiffs' immigration status or citizenship at the present or any point in time," barring the discovery of the plaintiffs' federal or state income tax returns, and protecting the plaintiffs from having to disclose their current employer.  (Notice of Motion at 1; Memorandum of Law in Support of Plaintiffs' Motion for a Protective Order and Leave to Amend the Complaint ("Pl. Memo.") at 2; Reply Memorandum of Law in Further Support of Plaintiffs' Motion for a Protective Order and Leave to Amend the Complaint ("Pl. Reply") at 6-7).  Specifically, the plaintiffs seek a protective order as to the Defendants' First Request for Documents, paragraphs 12-15 and 33, and the Defendants' First Request for Admissions, paragraphs 1-15 and 20.  (Pl. Memo. at 2).  The plaintiffs contend that their immigration statuses, tax returns, and current employers are irrelevant to the current proceedings.  (Pl. Memo. at 3-4, 6).  The defendants oppose the plaintiffs' motion, alleging that the information sought is relevant to the plaintiffs' ability to recover under the FLSA and

the NYLL as well as their credibility, and would explain the absence of some payroll records. (Memorandum of Law of Defendants in Opposition to Plaintiffs' Motion for a Protective Order and Leave to Amend the Complaint ("Def. Memo.") at 12-15).

    1. <u>Legal Standard</u>

The Federal Rules of Civil Procedure allow "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Evidence that is irrelevant or may result in undue prejudice is outside the scope of discovery. A court may issue a protective order for good cause in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); see <u>Herbert v. Lando</u>, 441 U.S. 153, 177 (1979) ("[T]he district courts should not neglect their power to restrict discovery where justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (alteration in original)); <u>In re Cooper Tire & Rubber Co.</u>, 568 F.3d 1180, 1188-89 (10th Cir. 2009) (noting that Rule 26(c)'s "good-cause standard is intended to be flexible").

If the evidence sought is relevant, "the burden is upon the party seeking non-disclosure or a protective order to show good cause." <u>Penthouse International, Ltd. v. Playboy Enterprises</u>, 663 F.2d 371, 391 (2d Cir. 1981). Good cause is established by

4

"demonstrating a particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986); see In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) ("Ordinarily, good cause [for a protective order] exists when a party shows that disclosure will result in a clearly defined, specific and serious injury."); Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 480 (S.D.N.Y. 1982). Moreover, "the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought." Apex Oil Co. v. DiMauro, 110 F.R.D. 490, 496 (S.D.N.Y. 1985); accord Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 71-72 (S.D.N.Y. 2010).

    2. Immigration Status

        a. Recoverability of Backwages by Undocumented Workers Under the FLSA and the NYLL

The defendants contend that if the plaintiffs submitted invalid employment authorization documents, their "claims for wages under New York Labor Law are barred as a matter of law," and that evidence regarding their immigration status and work authorization is therefore relevant. (Def. Memo. at 12). In support of their position, the defendants cite Hoffman Plastic Compounds v. National Labor Relations Board, 535 U.S. 137, 148-49 (2002), in which the Supreme Court disallowed an undocumented immigrant from recovering backpay on a wrongful termination claim under the National Labor Relations Act (the "NLRA") because such a result would "run[]

counter to policies underlying [the Immigration Reform and Control Act (the "IRCA"), 8 U.S.C.A. § 1324c(a)]."

However, federal courts have made "clear that the protections of the FLSA are available to citizens and undocumented workers alike." Flores v. Albertsons, Inc., CV 01-00515, 2002 WL 1163623, at *5 (C.D. Cal. April 9, 2002); see also Colon v. Major Perry Street Corp., 987 F. Supp. 2d 451, 459 (S.D.N.Y. 2013) ("FLSA's mandatory language leaves no discretion for courts to alter the statute's remedial scheme based on an employee's immigration status."); Contreras v. Corinthian Vigor Insurance Brokerage, Inc., 25 F. Supp. 2d 1053, 1056 (N.D. Cal. 1998).  Therefore, in the context of wage and hour violations under both the FLSA and the NYLL, immigration status has generally been protected from discovery.  See Colon, 987 F. Supp. 2d at 464-65 (finding immigration status irrelevant to both FLSA and NYLL claims); Francois v. Mazer, No. 09 Civ. 3275, 2012 WL 1506054, at *1 (S.D.N.Y. April 24, 2012) ("This Court finds that evidence of immigration status is irrelevant and therefore not admissible regarding any issue with respect to any [FLSA or] New York state law claim."); Flores v. Amigon, 233 F. Supp. 2d 462, 464-65 (E.D.N.Y. 2002); Liu v. Donna Karan International, Inc., 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002) ("[C]ourts addressing the issue of whether defendants should be allowed to discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA have found such information to be undiscoverable.").

Thus, courts distinguish between "undocumented workers seeking backpay for wages actually earned," as in FLSA wage and hour violations, and "those seeking backpay for work not performed," as in a termination in violation of the NLRA.  <u>Flores</u>, 233 F. Supp. 2d at 463.  This is because denying undocumented workers the protection of the FLSA would "permit[] abusive exploitation of workers" and "create[] an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them," in violation of the spirit of the IRCA.  <u>Id.</u> at 463-64 (quoting <u>Contreras</u>, 25 F. Supp. 2d at 1056).  This distinction was clear before <u>Hoffman</u> and has been reiterated since.  <u>See</u> <u>Colon</u>, 987 F. Supp. 2d at 453 (noting that "courts have consistently and overwhelmingly distinguished NLRA precedents from FLSA doctrine").

For this reason, the defendants' contentions regarding the plaintiffs' NYLL claims fail.  In arguing that a worker who violates the IRCA is barred from recovery, the defendants rely only on cases in which plaintiffs sought backpay for work not performed. (Def. Memo. at 9-12); <u>see</u> <u>Madeira v. Affordable Housing Foundation, Inc.</u>, 469 F.3d 219, 222-23 (2d Cir. 2006) (holding that employee was not barred from recovering lost future wages due to work site personal injury under NYLL where employer knowingly employed undocumented workers); <u>Ambrosi v. 1085 Park Avenue, LLC</u>, No. 06 Civ. 8163, 2008 WL 4386751, at *13 (S.D.N.Y. Sept. 25, 2008) (holding that employee who submitted false documentation in violation of IRCA could not recover lost future wages in personal injury action under NYLL); <u>Balbuena v. IDR Realty LLC</u>, 6 N.Y.3d

7

338, 363, 812 N.Y.S.2d 416, 430 (2006) (holding that employee could recover lost future wages in personal injury action in absence of proof of IRCA violation). These cases are inapplicable where a plaintiff seeks backpay under the NYLL for work actually performed. See Akin v. Anion of Greenlawn, Inc., 35 F. Supp. 3d 239, 241-42 (E.D.N.Y. 2014) (holding that Hoffman and its progeny do not bar recovery of backpay for work actually performed under NYLL or FLSA); Colon, 987 F. Supp. 2d at 464-65 (finding plaintiffs' immigration status irrelevant to both FLSA and NYLL wage and hour claims and therefore denying discovery request).

Because the plaintiffs here seek payment under the FLSA and the NYLL only for work already performed (Pl. Reply at 5), the IRCA has no bearing on their ability to recover backpay.

     b. Relevance of Immigration Status to Absence of Payroll Records

The defendants also assert that information regarding the plaintiffs' immigration status is relevant and discoverable because it will "explain[] why [the plaintiffs] were satisfied with the manner in which [the d]efendants initially documented their wages, through the use of cash sheets, and only took action after [the d]efendants sought to move them to payroll." (Def. Memo. at 13). In making this argument, the defendants rely solely on Campos v. Lemay, No. 05 Civ. 2089, 2007 WL 1344344 (S.D.N.Y. May 7, 2007). (Def. Memo. at 14-15). In that case, the court ruled that a plaintiff's immigration status was discoverable notwithstanding "the in terrorem effect of inquiring into a party's immigration status" because it explained why the plaintiff's wages had been

paid in cash and had not been recorded, thereby undercutting the credibility of the plaintiff's claims of underpayment. Id. at *7-8. The Campos holding is not only "inconsistent with the overwhelming weight of authority," Marquez v. Erenler, Inc., No. 12 Civ. 8580, 2013 WL 5348457, at *1 n.1 (S.D.N.Y. Sept. 20, 2013), but is inapplicable here; unlike in Campos, 2007 WL 1344344, at *2, the plaintiffs in this case were not paid exclusively in cash, and the defendants have maintained payroll records. (Payroll Journal, attached as Exh. C to Letter of Kurt D. Olender dated Oct. 17, 2014 (attached as Exh. A to Declaration Of Howard A. Matalon dated June 23, 2015)).

          c.    Relevance of Immigration Status to Credibility

Finally, the defendants claim that evidence regarding immigration status is relevant to the plaintiffs' credibility. However, "[w]hile it is true that credibility is always at issue, that 'does not by itself warrant unlimited inquiry into the subject of immigration status when such examination would impose an undue burden on private enforcement of employment discrimination laws.'" Rengifo v. Erevos Enterprises, Inc., No. 06 Civ. 4266, 2007 WL 894376, at *3 (S.D.N.Y. March 20, 2007) (quoting Avila-Blum v. Casa de Cambio Delgado, Inc., 236 F.R.D. 190, 192 (S.D.N.Y. 2006)). Even if evidence regarding immigration status were relevant, "the risk of injury to the plaintiffs if such information were disclosed outweighs the need for its disclosure" because of the danger of intimidation and of undermining the purposes of the FLSA. Liu, 207 F. Supp. 2d at 192-93; see also Flores, 233 F. Supp. 2d at 464-65

("[T]he potential for prejudice far outweighs whatever minimal probative value [] information [about plaintiffs' immigration status] would have."); Fed. R. Evid. 403 (allowing courts to exclude relevant evidence if its probative value is substantially outweighed by danger of unfair prejudice).  In the instant case, because "[d]iscovery into a FLSA plaintiff's immigration status is irrelevant and impermissible," Colon, 987 F. Supp. 2d at 464, the plaintiffs' application for a protective order is granted, and the defendants are precluded from seeking evidence regarding the plaintiffs' immigration status and work authorization.

   3. Tax Returns

The defendants also seek discovery of the plaintiffs' federal and state income tax returns.  (Def. Doc. Req., Request nos. 14, 15; Def. RFA, Request nos. 14, 15).  Income tax returns are not inherently privileged.  However, "courts are typically reluctant to compel their disclosure because of both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns."  Uto v. Job Site Services Inc., 269 F.R.D. 209, 212 (E.D.N.Y. 2010).  In order for a court to compel discovery of income tax returns, a two-pronged test must be met: "first, the court must find that the returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable."  Securities and Exchange Commission v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985); accord

Rengifo, 2007 WL 894376, at *2.  Modern courts tend to place the burden on the "party seeking discovery to demonstrate both relevancy and a compelling need."  Uto, 269 F.R.D. at 212; see, e.g., Ellis v. City of New York, 243 F.R.D. 109, 111-12 (S.D.N.Y. 2007).

Here, the defendants have failed to demonstrate either relevance or a compelling need.  While the defendants contend that "the returns will further corroborate [the] [d]efendants' position that [the plaintiffs] were paid the amount of compensation required by state and [f]ederal law" (Def. Memo. at 16), "the corporate defendants possess relevant data on hours and compensation, and there is no reason to assume that [the] defendants' records are less reliable than any records maintained by [the plaintiffs]." Rengifo, 2007 WL 894376, at *2.  Indeed, the plaintiffs' tax returns would only include total income and not details that would be relevant in an FLSA and NYLL suit, such as weekly wages and specific hours worked.  Rather, "tax information from plaintiffs would serve no obvious purpose other than intimidation." Marquez, 2013 WL 5348457, at *2.  The plaintiffs' income tax returns need not be disclosed.

    4. Identity of Current Employers

Finally, the defendants request that the plaintiffs identify their current employers and admit that they are being paid in cash. (Def. Doc. Req., Request no. 33; Def. RFA, Request no. 20). Generally, information from or about plaintiffs' current employers is irrelevant in determining whether the defendant-employers

11

violated wage and hour laws. See Campos v. Zopounidis, No. 3:09 CV 1138, 2011 WL 4852491, at *3 (D. Conn. Oct. 13, 2011) (holding all testimony of plaintiff's current employers "inadmissible because it is wholly irrelevant to issue of whether or not Plaintiff received adequate compensation from the Defendants"); Wagner v. Viacost.com, No. 06 81113 CIV, 2007 WL 1879914, at *1-2 (S.D. Fla. June 29, 2007) (holding that documents from plaintiff's current employer "are not relevant to the defense of this [FLSA] lawsuit"); Barrington v. Mortage IT, Inc., No. 07 61304 CIV, 2007 WL 4370647, at *4 (S.D. Fla. Dec. 10, 2007) ("The Court finds that the records of Plaintiffs' former employers do not appear relevant to the claims or defenses herein -- whether Plaintiffs worked for Defendant more than 40 hours a week without receiving overtime compensation and whether Defendant properly classified Plaintiffs' positions as exempt from the FLSA overtime provisions.").

Here, the defendants argue that the identity of the plaintiffs' current employers is relevant because the plaintiffs were "content being paid in cash because of their undocumented status." (Def. Memo. at 16). The defendants seek to prove that the plaintiffs "are continuing to be paid on a cash basis . . . precisely because they want to . . . avoid scrutiny." (Def. Memo. at 16). But whatever the plaintiffs' arrangement with their current employers might be, it says nothing about the hours that the plaintiffs worked for the defendants or what they were paid. Thus, the defendants have "failed to offer any valid argument in

support of [their] position that the requested documents are necessary for the defense of this case." Wagner, 2007 WL 1879914, at *2. Accordingly, the plaintiff's application for a protective order for the identity of their current employers is granted.

B. Motion for Leave to Amend Complaint

The plaintiffs also seek leave to amend the complaint to add an additional defendant, add an opt-in plaintiff, and remove the collective and class action allegations. (Notice of Motion at 1; Pl. Memo. at 6; Proposed First Amended Complaint ("Amend. Compl."), attached as Exh. C to Cooper Decl., ¶¶ 17, 114-120, 123).

1. Legal Standard

While parties are free to amend their pleadings once as a matter of course within twenty-one days of serving a complaint or receiving a responsive pleading or motion, Fed. R. Civ. P. 15(a)(1), "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has interpreted this rule liberally, stating:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962).

2. Adding an Employer

The plaintiffs seek to add Lauren Fox as a defendant, arguing

13

that she served as an employer of the plaintiffs. (Amend. Compl., ¶¶ 17, 123). Motions to amend are generally governed by Rule 15(a) of the Federal Rules of Civil Procedure. However, Rule 21 of the Federal Rules of Civil Procedure controls if the proposed amendment adds new parties. Bridgeport Music, Inc. v. UMG Recordings, Inc., No. 05 Civ. 6430, 2008 WL 113672, at *2 (S.D.N.Y. Jan. 10, 2008). Rule 21 states that a party may be added to an action "at any time, on just terms." In deciding whether to permit joinder, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15." Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980); accord Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004); Momentum Luggage and Leisure Bags v. Jansport, Inc., No. 00 Civ. 7909, 2001 WL 58000, at *1  (S.D.N.Y. Jan. 23, 2001); Clarke v. Fonix Corp., No. 98 Civ. 6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999)).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[C]ontinuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control" is not required, and "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA." Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

Whether someone is an employer is analyzed using an "economic reality test," which requires consideration of four factors:

"whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)). "No one of the four factors standing alone is dispositive" and "the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." Id. (internal citation omitted); see also Irizarry v. Catsimatidis, 722 F.3d 99, 103-05 (2d Cir. 2013), cert. denied, 134 S. Ct. 1516 (2014); Moon v. Kwon, 248 F. Supp. 2d 201, 236-37 (S.D.N.Y. 2002). Individuals may therefore be deemed "employers" whether or not they have an ownership interest in the employing corporation as long as they have "operational control" over the enterprise. See Herman, 172 F.3d at 140 (finding that non-controlling shareholder qualified as employer under FLSA); Ling Nan Zheng v. Liberty Apparel Co., 556 F. Supp. 2d 284, 299 (S.D.N.Y. 2008)(same); Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192-93 (S.D.N.Y. 2003). While the New York Court of Appeals has not determined whether the employer test is the same under the NYLL and FLSA, Irizarry, 722 F.3d at 117, "[d]istrict courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA," Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013).

The plaintiffs here have made factual allegations that may

15

meet the elements of the economic reality test, because they allege that Ms. Fox "supervised and controlled plaintiffs' work, [] controlled their compensation" (Pl. Memo. at 6), and was "present on a daily basis" (Pl. Rep. Memo. at 8).  The plaintiffs may uncover evidence during discovery to support these allegations. While the defendants argue that Ms. Fox "was not involved in any of the Company's daily operations, particularly employment decisions" (Def. Memo. at 19), this is an issue for the factfinder to resolve. In the instant case, the plaintiffs have made sufficient factual allegations for Lauren Fox to be added as an additional employer in the amended complaint.

        3. "Opt-in" Plaintiff

The plaintiffs also seek to add Teofilio Toribio as an opt-in plaintiff. (Pl. Memo. at 6).  The Federal Rules of Civil Procedure allows a plaintiff to join a lawsuit if: "(a) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).  The FLSA requires plaintiffs to submit a consent to join in writing in order to become a party to the case.  See FLSA, 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  In the instant case, the plaintiffs allege that Mr. Toribio is asserting a right arising out of the same transaction or

occurrence as the existing claims and there is a common question of law or fact. Mr. Toribio has filed a consent to join (Pl. Memo. at 6 n.1), and the defendants do not oppose. Therefore, Mr. Toribio may be joined as a plaintiff to the suit.

### 4. Collective and Class Action Allegations

The plaintiffs finally seek to remove the collective and class action allegations. (Pl. Memo. at 6). This issue is not contested by the defendants. The plaintiffs are granted leave to remove the collective and class action allegations.

### Conclusion

The plaintiffs' motion (Docket no. 21), is granted. The plaintiffs' application for a protective order is granted to the extent that the defendants may not seek discovery of the plaintiffs' immigration status, tax returns, or current employers. The plaintiffs are also granted leave to amend the complaint to add Lauren Fox as a defendant, add Teofilio Toribio as a plaintiff, and remove the collective and class action allegations.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
      July 6, 2015

17

Copies transmitted this date:

Peter H. Cooper, Esq.
Cilenti & Cooper, PLLC
708 Third Ave.
6th Floor
New York, NY 10017

Christian J. Jensen, Esq.
Howard Matalon, Esq.
Olender Feldman LLP
422 Morris Ave.
Summit, NJ 07901